DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: 702.629.7900
Facsimile:  702.629.7925
E-mail:      djb@mgalaw.com

Tracey L. Brown, Esq.
Alexandra D. Mahabir, Esq.
**THE COCHRAN FIRM**
55 Broadway, 23rd Floor
New York, New York 10006
Telephone: 212.553.9165
Facsimile: 212.227.8763
E-mail: tbrown@cochranfirm.com
         amahabir@cochranfirm.com
Will Comply with LR IA 11-2 within 14 days

*Attorneys for Plaintiff Broderick Sinclair*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRODERICK SINCLAIR, individually, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| OTIS WORLDWIDE CORPORATION, OTIS ELEVATOR COMPANY, ROBERT LINDLEY, STEVE BERGER, ZACHARY CHRISTIANSEN, STEVEN SPERB, KEVIN HANSON, JANE NGUYEN, and PAUL HENTZ; DOES I through X; and ROE CORPORATIONS I through X, inclusive, | |
| Defendants. | |

Plaintiff BRODERICK SINCLAIR ("Plaintiff"), by and through his attorneys of record, the law firms MAIER GUTIERREZ & ASSOCIATES and THE COCHRAN FIRM (will comply with LR IA 11-12 within 14 days) hereby demands a trial by jury and complains and alleges against the above named defendants, OTIS WORLDWIDE CORPORATION, OTIS ELEVATOR COMPANY (hereinafter

1

referred to as "OTIS"), ROBERT LINDLEY, STEVE BERGER, ZACHARY CHRISTIANSEN, STEVEN SPERB, KEVIN HANSON, JANE NGUYEN, and PAUL HENTZ, (collectively referred to as "Defendants"), as follows:

## NATURE OF THE CLAIMS

1.     This is a civil action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including their unlawful discrimination of Plaintiff in violation of the Nevada Civil Rights Law.

2.     During Plaintiff's employment at OTIS, Defendants have subjected Plaintiff to unlawful discrimination based on his race, a hostile work environment, disparate treatment, and unlawful retaliation.

3.     Defendants' conduct is knowing, malicious, willful, and wanton and/or shows a reckless disregard for Plaintiff. It has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to his professional and personal reputations, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 (1-4) and 2202 as this case involves a federal question based on the Decedent's protected rights under the United States Constitution, specifically 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000 et seq. ("Title VII"). Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate state law claims pursuant to 28 U.S.C. § 1367. The matter in controversy exclusive of interest and costs exceeds $100,000 (one hundred thousand dollars).

5.     Venue is proper in this district under 28 U.S.C. § 1391(b).

6.     The discriminatory actions complained of herein were committed within Las Vegas, Nevada.

## PARTIES

7.     Plaintiff Broderick Sinclair is a 55-year-old African American male who at all relevant times met the definition of an "employee" under all applicable statutes.

8.     Defendant OTIS is an international corporation, with a regional Las Vegas, Nevada

2

office (located at 711 E. Pilot Rd., Las Vegas, NV 89119) duly existing under, and by virtue of the laws of the State of Nevada and maintains its headquarters at 1 Carrier Place, Farmington, Connecticut 06032. At all relevant times, OTIS met the definition of an "employer" under all applicable statutes.

9. At all relevant times, Defendant ROBERT LINDLEY was a Supervisor at OTIS, and he participated directly in the unlawful discrimination, hostile work environment, retaliation, and otherwise unfair employment decisions and actions taken against Plaintiff.

10. At all relevant times, Defendant STEVEN BERGER was a General Manager at OTIS, and he participated directly in the unlawful discrimination, hostile work environment, retaliation, and otherwise unfair employment decisions and actions taken against Plaintiff.

11. At all relevant times, Defendant ZACHARY CHRISTIANSEN was a Sales Manager at OTIS, and he participated directly in the unlawful discrimination, hostile work environment, retaliation, and otherwise unfair employment decisions and actions taken against Plaintiff.

12. At all relevant times, Defendant STEVEN SPERB was a Sales Manager at OTIS, and he participated directly in the unlawful discrimination, hostile work environment, retaliation, and otherwise unfair employment decisions and actions taken against Plaintiff.

13. At all relevant times, Defendant KEVIN HANSON was a General Manager at OTIS, and he participated directly in the unlawful discrimination, hostile work environment, retaliation, and otherwise unfair employment decisions and actions taken against Plaintiff.

14. At all relevant times, Defendant JANE NGUYEN was a Human Resources employee at OTIS, and she participated directly in the unlawful discrimination, hostile work environment, retaliation, and otherwise unfair employment decisions and actions taken against Plaintiff.

15. At all relevant times, Defendant PAUL HENTZ was a Human Resources employee at OTIS, and he participated directly in the unlawful discrimination, hostile work environment, retaliation, and otherwise unfair employment decisions and actions taken against Plaintiff.

**PROCEDURAL REQUIREMENTS/EXHAUSTION OF ADMINISTRATIVE REMEDIES**

16. This claim has been commenced and this action has been started within three (3) years of the happening of the events on which the claim is based.

17. Plaintiff has exhausted all administrative remedies.

3

18.     On November 15, 2021, Plaintiff timely filed a charge of discrimination against Defendants alleging facts of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 487-2021-01033 against Defendant OTIS (Attached hereto as **Exhibit 1**). The Charge became dual-filed with the Nevada Equal Rights Commission ("NERC"). This filing fulfilled Plaintiff's obligation to initiate an administrative claim before filing suit.

19.     Plaintiff commenced this action in the District of Nevada within ninety 90 days after receipt of his Right to Sue letter from the EEOC dated September 14, 2022.

20.     All conditions and requirements precedent to the commencement of this action have been complied with.

### FACTUAL ALLEGATIONS

### Mr. Sinclair's Hiring in January of 2013

21.     Mr. Sinclair was hired to join OTIS in January of 2013 as an Account Manager reporting to Defendant Robert Lindley (hereinafter "Mr. Lindley"), a White Supervisor, who at the time managed the open order functional area that was a critical part of Mr. Sinclair's performance metrics.

22.     White and younger employees were able to freely speak with Mr. Lindley directly and in person, However, Mr. Sinclair's attempts at in person communication were met with Mr. Lindley humiliating him by yelling at him and berating him.

23.     As a result, Mr. Lindley and Mr. Sinclair communicated through email only. This impacted Mr. Sinclair's daily job function since daily communication with Mr. Lindley was required to get pricing for proposals for customers and meet his quotas. Mr. Sinclair often made multiple requests for pricing info because Mr. Lindley discriminatorily delayed responding to his requests. Younger White employees were not treated in this manner.

24.     During his first two years at OTIS, Mr. Sinclair garnered excellent performance reviews. Due to his demonstrated results, he was promoted to Senior Account Manager. Mr. Sinclair established himself as a shining star within the Las Vegas office of OTIS while managing some of the company's largest Las Vegas accounts.

25.     In the beginning of 2017, the work environment for Mr. Sinclair became drastically worse due to the assignment of new managers who discriminated against him due to his age and race.

This unlawful treatment led to a significant decrease in his compensation and an increasingly hostile work environment when he complained about the discrimination.

**Mr. Sinclair's Complaints against Mr. Lindley's Discriminatory Treatment Resulted in Retaliation Against Him**

26.     In 2017 Defendant Steve Berger (hereinafter "Mr. Berger"), the White Regional General Manager at the time, conducted a ride along with Mr. Sinclair to visit a customer. During the ride along, Mr. Sinclair confided in Mr. Berger about the unfair treatment he received from Mr. Lindley, including Lindley refusing to provide Mr. Sinclair with timely pricing proposals for his open order customers. Mr. Berger, aware of Mr. Lindley's racial animus toward Mr. Sinclair, responded by asking him **"Is it because you're black?"**

27.     A few weeks later, Mr. Berger sent Jared Anthony, the white Regional Sales Manager, to conduct a second ride along with Mr. Sinclair in order to give a pretextual and scathing report on Mr. Sinclair's performance in retaliation for Mr. Sinclair's complaint about Mr. Lindley.

28.     Following the second ride along and in direct retaliation for Mr. Sinclair's complaint about Mr. Lindley, OTIS put Mr. Sinclair on an unwarranted Performance Improvement Plan (hereinafter "PIP") after the ride along. The PIP asserted performance deficiencies with the same open order metrics for which Mr. Sinclair had to rely on his tormentor, Mr. Lindley. Prior to being put on the discriminatory and retaliatory PIP, Mr. Sinclair never received any support on navigating open orders through Mr. Lindley, nor had he received any progressive discipline. Mr. Sinclair successfully met the goals of the pretextual PIP within 90 days.

29.     Despite meeting all the metrics given to him, Mr. Sinclair realized there was a plan in place to push him out of OTIS based on his race and age, particularly by the Sales Managers including Defendant Christiansen (hereinafter "Defendant Christiansen") and Defendant Steve Sperb (hereinafter "Defendant Sperb"), and Defendant Kevin Hanson (hereinafter "Defendant Hanson").

30.     Defendants Christiansen, Sperb, and Hanson were responsible for negotiating deals within the office and assigning open orders and new accounts to Account Managers. Because there were no assigned territories in the Las Vegas office, individual Account Manager's commission potential is heavily based on these assignments. Mr. Christiansen, Mr. Sperb, and Mr. Hanson

consistently favored and rewarded younger white employees including Rachel Smith (hereinafter "Ms. Smith") and Somer Plucker (hereinafter "Ms. Plucker"), while hindering Mr. Sinclair due to his race and age.

31.     In the beginning of 2019, despite Mr. Sinclair maintaining his previously established high quality of work, his quarterly commissions drastically decreased. Defendants assigned the vast majority of high earning accounts to younger white account managers within the Las Vegas Office, including Ms. Plucker and Ms. Smith. In fact, several steady and profitable accounts were discriminatorily taken away from Mr. Sinclair and given to Ms. Plucker and Ms. Smith, thus decreasing his commission earning potential.

**Defendants Discriminatorily Restricted Mr. Sinclair's**

**Access to Lucrative OTIS Accounts**

32.     During Mr. Sinclair's tenure, the Las Vegas OTIS office had an established practice that when an Account Manager called on an account, once the contract was secured, the account would be assigned to that same Account Manager. This practice was routinely followed for non-African American Account Managers at OTIS.

33.     One example of the discriminatory poaching of accounts from Mr. Sinclair in favor of younger, white colleagues were the accounts for two properties in Laughlin, Nevada. Mr. Sinclair initially called on those properties and presented OTIS's products and services. However, when Mr. Christiansen and Mr. Hanson negotiated the final deals on those Laughlin properties, the accounts were split between Ms. Plucker and Ms. Smith, rather than given back to Mr. Sinclair, resulting in a direct negative impact to Mr. Sinclair's compensation.

34.     Another example of the discriminatory treatment Mr. Sinclair faced surrounded the Palms Hotel account, which was initially Mr. Sinclair's account that he had serviced well. When Stations Casino purchased the Palms, Mr. Sinclair dedicated time and effort to work through any issues and developed a strong relationship with the contact at the property. Despite these efforts, when an additional deal arose with a Stations property, Defendants Christiansen and Hansen discriminatorily assigned it to Ms. Smith. In fact, based on the previously established relationship, the contact at this new property continued to reach out to Mr. Sinclair to assist with issues that arose after

the account had been taken away from him.  Due to the clear ongoing discrimination, Mr. Sinclair felt cheated, disrespected, and humiliated at the Las Vegas Office.

35.    Further, Defendants Christiansen and Hanson assigned the large and lucrative MGM 400-unit account solely to Ms. Plucker and Ms. Smith. As a result of this assignment, Ms. Plucker and Ms. Smith were catapulted to top positions within the Las Vegas office, and it also provided them with a national spotlight within the entire region.

36.    As a result of the volume assigned to just Ms. Plucker and Ms. Smith from the MGM account, OTIS discriminatorily reassigned Ms. Plucker and Ms. Smith's poor performing accounts to Mr. Sinclair to clean up and attempt to salvage, leaving him with no commission earning opportunities. In fact, during this period Mr. Sinclair was stripped of good standing accounts that were in turn given to younger white employees, which, based on the established office rules should have stayed with Mr. Sinclair, including the Edgewater Casino and Circus Circus accounts.

37.    Despite being a talented, dedicated and loyal employee, Mr. Sinclair never received assignments for new negotiated accounts.

**Mr. Sinclair was Denied a Promotion to the Modernization Specialist Position**

38.    Mr. Sinclair excelled most in the area of modernization. This process applies to elevator units that are over 20 years old with obsolete parts which require complete modernization of the units. In light of his accomplishments in this area, Mr. Sinclair won the award for Modernization Overachievement three times.

39.    OTIS created a Modernization Specialist position dedicated to modernization in early 2020, which would have been a substantial salary increase for Mr. Sinclair if he was promoted to the position.

40.    Despite his documented achievements in modernization and his clear superior qualifications, Mr. Sinclair was denied this promotion to the new Modernization Specialist position. In fact, Mr. Sinclair was never provided with an opportunity to interview for this role. Instead, OTIS hired a younger White male, Matt Holsman, to fill the role.

41.    As per the practice and routine, when a new job is available, OTIS sends out a standard e-mail containing the position and location. However, Mr. Sinclair was never made aware of the

modernization position until Mr. Holsman was hired for it. OTIS claims that the modernization position was posted to the company portal. However, no e-mail was ever released to the company regarding this specific modernization position in Nevada.

### The Hostile Work Environment to Which Mr. Sinclair was Subjected

42.     In addition to being ignored when it came to the assignment of new, negotiated accounts, Mr. Sinclair's attempts at securing support and assistance for the customers he managed were often ignored.

43.     Being proactive in managing his accounts, Mr. Sinclair would always inform the Las Vegas office of any potential negative feedback from a customer.  However, his warnings were disregarded until the customers lodged complaints and threatened to cancel the account, leaving little opportunity to rectify the situation. This occurred on large accounts such as the Palms, Treasure Island, and Miracle Mile, potentially putting Mr. Sinclair in a position to lose his largest earning accounts.

44.     For example, in September of 2019, Mr. Sinclair got a call that baggage lift at Palms needed maintenance from OTIS and that one of the moving walkways was out of service. Mr. Sinclair promptly notified the entire office of the issues with the Palms Casino at a meeting including Defendants Hanson, Christiansen and Jon Jasper, a general manager. Defendants Hanson and Mr. Jasper told Mr. Sinclair at the meeting that the issue would be addressed. Instead, no one went to rectify the situation. On September 25, 2019, the Palms client called and complained to Defendants Christensen and Hanson about how no one addressed the baggage lift and walkway issue. Later that same day, Defendants Christensen and Hanson attempted to blame Mr. Sinclair, despite the fact that he properly brought the issue to them, his managers, who assured him that they would address the issue.

45.     Mr. Sinclair had pleaded with Defendant Lindley, who led the open order department, for several months to complete the mandatory safety tests required for the Treasure Island account to legally run their elevators. Mr. Sinclair was ignored until a fine was poised to be imposed on this important client.

46.     Younger, white Account Managers were not subjected to this discriminatory treatment of having their requests for customer support routinely ignored.

47.     Mr. Sinclair quickly realized due to the ongoing discriminatory treatment to which he was subjected, there would be no opportunity for promotions or advancement at OTIS.

48.     Mr. Sinclair remained committed to OTIS and hoped that perhaps if he advanced his education by earning an MBA, he could have a chance at a promotion. Despite the fact that neither Ms. Plucker nor Ms. Smith had an MBA, Mr. Sinclair knew that as an older, African American at OTIS, he always had to do more.   As a result, he enrolled in an MBA program at Northeastern University.

49.     Further demonstrating his loyalty to OTIS, Mr. Sinclair participated in the Employee Scholar Program which required a commitment to continue working at the company for two years after earning his MBA degree.

50.     Mr. Sinclair complained about the discriminatory treatment on multiple occasions, including to Defendant Sperb, but his complaints were always ignored. In February of 2020, Mr. Sinclair filed an EEOC Charge against OTIS. Shortly after filing, Mr. Sinclair withdrew the claim as he reasonably feared that filing an external complaint would result in retaliation, including termination and the loss of his education benefits through the Employee Scholar Program when he was only a few months away from completing his MBA.

51.     In October of 2020, a customer from The Vine purchased four handrails from OTIS to be installed in two elevators. The total amount of the project was $15,000.00. OTIS was supposed to take out all the old handrails prior to installing the new ones. Instead, Daniel Cornado, a lead operations supervisor allowed the employees to install two new handrails while the old ones were still in the elevators. Mr. Sinclair complained to Defendant Sperb about Mr. Cornado's actions. However, nothing was done and the elevators were completed and installed the wrong way.

52.     Seeing how Mr. Sinclair's complaints went unaddressed caused his supervisors and colleagues to continue to undermine him and treat him with hostility. Mr. Cornado became very difficult to work with including refusing to return Mr. Sinclair's phone calls regarding maintenance and operations work. Mr. Cornado's hostility towards Mr. Sinclair continued for the rest of Mr. Sinclair's tenure at OTIS.

53.      Another example of an instance where Mr. Sinclair was treated with hostility occurred

in December of 2020 when OTIS transferred the Plazas account to Mr. Sinclair. The Plazas account originally was worked on by Ms. Plucker, but was now in collections. Despite the shoddy work on the account occurring before it was assigned to him, Mr. Sinclair worked tirelessly to get the collections issue cleared up and get the account resolved, which he did.

54.     In January of 2021, Mr. Sinclair lodged another internal complaint, this time with the OTIS Ombudsman. The complaint was 13 pages and referenced his disparate treatment, lack of merit increase, lack of review, treatment by Defendants, and how Mr. Sinclair is systematically excluded from the opportunities at OTIS. No one from the Ombudsman office or HR contacted him to investigate his complaints.

55.     On February 19, 2021, Mr. Sinclair later learned that Ms. Smith and Ms. Plucker were being rewarded with an annual award based on performance metrics that they garnered unfairly due to preferential treatment based on their age and race. Mr. Sinclair was not given an award despite his impressive performance.

**Mr. Sinclair Escalated His Complaints to Defendants Nguyen and Hentz**

**of OTIS Human Resources**

56.     Disheartened by the lack of response to his complaints and the continued discrimination and retaliation, Mr. Sinclair lodged another internal complaint on February 21, 2021, this time with Jane Nguyen (hereinafter "Defendant Nguyen") in Human Resources (hereinafter "HR") wherein he again outlined the discriminatory treatment and hostile work environment to which he was subjected.

57.     Defendant Nguyen failed to respond to Mr. Sinclair's complaint. Mr. Sinclair then followed up and copied Defendant Paul Hentz (hereinafter "Defendant Hentz"), also with HR, and only then did Ms. Ngyuen begin to respond, acknowledging that she had also received his prior Ombudsman complaint, which had gone unanswered. Mr. Sinclair reiterated his complaints and described the hostile work environment during a phone meeting with Ms. Ngyuen.

58.     In April of 2021, the hostile work environment worsened for Mr. Sinclair. Mr. Sinclair complained to Defendant Sperb multiple times regarding a phone issue on one of his accounts. Rather than assist Mr. Sinclair with resolving the issues, Defendant Sperb reprimanded Mr. Sinclair for sending multiple emails and required him to prove his integrity by asking the white customer to

confirm the issue via email because Defendant Sperb did not believe him. Later when the customer consultant, Lerch Bates, and Regional Manager Jeremiah Potter, both white, brought up the issue, Defendant Sperb addressed it immediately.

59.   On April 16, 2021, Mr. Sinclair highlighted this discriminatory treatment along with other examples to Defendant Sperb via email. Defendant Sperb again ignored his complaints. Mr. Sinclair also complained about the ongoing discriminatory treatment to Defendant Hanson, and specifically asked Hanson if he decided to destroy Mr. Sinclair's career because he is black, but his complaints fell on deaf ears.

60.   By May 11, 2021, Mr. Sinclair could no longer bear the discriminatory treatment at OTIS and had a call with Defendant Sperb to discuss his continued complaints. During what was supposed to be a private call between Defendant Sperb and Mr. Sinclair, Defendant Nguyen joined and rather than address his complaints, Defendant Ngyuen gaslighted him, saying that Mr. Sinclair's complaints of discrimination made Mr. Sperb feel uncomfortable.

61.   Defendants continued to take no action to remedy Mr. Sinclair's complaints of discrimination. Finally, in June of 2021, Mr. Sinclair met with Defendants Nguyen and Hentz who informed him that OTIS was dismissing his numerous discrimination complaints.

62.   Further, when Mr. Sinclair inquired about being discriminatorily denied the modernization specialist role, Defendant Hentz, revealing his own discriminatory animus, stated that even though Mr. Sinclair had sold millions of dollars in modernization, more than any other sales representative, he was "**not smart enough to sell modernization**."   Mr. Sinclair was clearly discouraged that HR would do anything to remedy is complaints when Defendant Hentz, an HR leader, used this racist trope of questioning the intelligence of an African American man.

63.   In addition, Defendant Nguyen discouraged Mr. Sinclair form asserting his rights to work in an environment free of discrimination by threatening his employment, telling him that if he continued to complain, he could no longer work for OWS. These discriminatory and retaliatory comments were based solely on Mr. Sinclair's age, race, and protected activity.

64.     On September 30, 2021, due to OTIS ignoring and discounting Mr. Sinclair's complaints, Mr. Sinclair followed up with Bianca Forde, Senior Director and Counsel of Ethics and Compliance at OTIS. Ms. Forde acknowledged Mr. Sinclair's frustrations but failed to remedy them.

65.     On October 12, 2021, Mr. Sinclair sent an e-mail to Jeremy Ewell, a general manager, complaining of the discrimination and disparate treatment at OTIS. Specifically, Mr. Sinclair noted how Ms. Smith and Ms. Plucker were once again rewarded with another account. Mr. Ewell never responded to Mr. Sinclair's e-mail.

66.     In February of 2022, Ms. Forde spoke to Mr. Sinclair via phone for three hours regarding his complaints and frustrations. Ms. Forde ended the conversation by dismissing Mr. Sinclair's complaints.

67.     Also in February 2022, Defendants targeted Mr. Sinclair due to his age and race and in retaliation for his numerous complaints by investigating his use of his corporate credit card. Many younger and white employees, including Defendant Christiansen and Ms. Smith frequently used their corporate cards for personal expenses, yet were not targeted for investigation.

68.     In March of 2022, in furtherance of their discriminatory practices and in retaliation for his complaints, Mr. Sinclair was unlawfully terminated by OTIS.

69.     As a result of Defendants' discrimination, retaliation and other unlawful conduct, Mr. Sinclair has suffered significant financial loss, been denied full and fair compensation, and has suffered loss of career fulfillment and harm to his professional and personal reputation.  In addition, he has suffered severe mental anguish and emotional distress, including but not limited to stress and anxiety, headaches, sleep disturbances, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering.

### AS AND FOR A FIRST CAUSE OF ACTION

**(Race Discrimination in Violation of 42 U.S.C. § 1981 as Against all Defendants)**

70.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs, inclusive, as if fully set forth herein.

71.     Defendants have discriminated against Plaintiff on the basis of his race, in violation of the 42 U.S.C. § 1981, by denying to him equal terms and conditions of employment, including but

not limited to, subjecting him to disparate working conditions, denying him the opportunity to work in an environment free of unlawful discrimination, denying him opportunities for professional growth and promotion, denying him pay and other benefits equal to that of similarly situated employees, and unlawfully terminating him.

72.     Defendants have discriminated against Plaintiff on the basis of his race, in violation of 42 U.S.C. § 1981 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy discrimination of Plaintiff by his supervisors.

73.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the 42 U.S.C. § 1981, Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which they are entitled to an award of monetary damages and other relief.

74.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the 42 U.S.C. § 1981, Plaintiff suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Hostile Work Environment of 42 U.S.C. § 1981 as Against all Defendants)

75.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs, inclusive, as if fully set forth herein.

76.     Defendants subjected Plaintiff to a hostile work environment based on his race.  The conditions and conduct that Plaintiff was subjected to were objectively and subjectively hostile and substantially and adversely impacted the terms and condition of Plaintiff's employment.  Plaintiff complained about the hostile environment to Human Resources and Defendants/Human Resources failed to promptly prevent and correct the hostile, racially discriminatory conduct.

77.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages.  Plaintiff

is entitled to declaratory relief, injunctive relief, and compensatory and punitive damages to make him whole.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Retaliation in Violation of 42 U.S.C. § 1981 as Against all Defendants)

78.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 68, inclusive, as if fully set forth herein.

79.     Defendants have retaliated against Plaintiff by, inter alia, harassing him, threatening him, humiliating him, and undermining his ability to effectively perform his job in violation of 42 U.S.C. § 1981 for his opposition to Defendants' discriminatory practices toward himself and other employees and/or his participation in criticizing and lodging complaints about Defendants' discriminatory practices toward himself and other workers, as well as unlawfully terminating him.

80.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

81.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of 42 U.S.C. § 1981, Plaintiff suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Race and Age Discrimination in Violation of Title VII as Against all Defendants)

82.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs, as if fully set forth herein.

83.     Defendants have discriminated against Plaintiff on the basis of his race and age, in violation Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000 et seq. ("Title VII") by denying to him equal terms and conditions of employment, including but not limited to, subjecting him to disparate working conditions, denying him promotions, denying him the opportunity to work

14

in an environment free of unlawful discrimination, and denying him equal pay and other benefits to that of similarly situated non-black employees.

84.     Defendants have discriminated against Plaintiff on the basis of his race and age, in violation of Title VII by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy discrimination of Plaintiff by his colleagues and supervisors.

85.     Defendants have discriminated against Plaintiff on the basis of his race and age in violation of Title VII through a pattern and practice of fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive race and age discrimination of the plaintiff by the Defendants.

86.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff suffered, and continues to suffer, monetary and/or economic harm, including but not limited to loss of past and future income, compensation, and benefits for which he is entitled to an award of damages.

87.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of damages.

88.     Defendants' unlawful and discriminatory actions constitute malicious, willful, and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Retaliation in Violation of Title VII as Against all Defendants)

89.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

90.     Defendants have retaliated against Plaintiff by, inter alia, harassing him, humiliating him, undermining his ability to effectively perform his job, and denied him promotions and/or promotional opportunities in violation of Title VII for his opposition to Defendants' discriminatory practices toward himself and other employees and/or his participation in criticizing and lodging

complaints about Defendants' discriminatory practices toward himself.

91.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff suffered, and continues to suffer, monetary and/or economic harm, including but not limited to loss of past and future income, compensation, and benefits, for which he is entitled to an award of damages.

92.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of damages.

93.     Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION

**(Race and Age Discrimination in Violation of N.R.S. 613.330 as Against all Defendants)**

94.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

95.     Defendants' conduct, by and through its agents, in treating Plaintiff in the manner unequal to other employees, discriminatorily denied Plaintiff equal treatment on the basis of race in violation of N.R.S. 613.330 by denying him equal terms and conditions of employment, including but not limited to, subjecting him to disparate working conditions, denying him promotions, denying him the opportunity to work in an environment free of unlawful discrimination, and denying him equal pay and other benefits that were provided to similarly-situated white employees.

96.     Defendants have discriminated against Plaintiff on the basis of his race and age, in violation of N.R.S. 613.330 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy discrimination of Plaintiff by his supervisors.

97.     Defendants have discriminated against Plaintiff on the basis of his race and age in violation of N.R.S. 613.330 through a pattern and practice of fostering, condoning, accepting, ratifying

and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and/or pervasive race discrimination of the Plaintiff by the Defendants.

98.   As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of N.R.S. 613.330, Plaintiff suffered, and continues to suffer, monetary and/or economic harm, including but not limited to loss of past and future income, compensation, and benefits for which he is entitled to an award of damages.

99.   As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of N.R.S. 613.330, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of damages.

100.   Defendants' unlawful and discriminatory actions constitute malicious, willful, and wanton violations of N.R.S. 613.330 for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Retaliation in Violation of N.R.S. 613.340 as Against all Defendants)

101.   Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

102.   Defendants have retaliated against Plaintiff by, inter alia, firing him, harassing him, threatening him, humiliating him, and undermining his ability to effectively perform his job in violation of N.R.S. 613.340 for his opposition to Defendants' discriminatory practices toward him and/or his participation in criticizing and lodging complaints about Defendants' discriminatory practices toward him.

103.   As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of N.R.S. 613.340, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief.

104.   As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of N.R.S. 613.340, Plaintiffs suffered and continue to suffer severe mental anguish and

1  emotional distress, including but not limited to depression, humiliation, embarrassment, stress and

2  anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is

3  entitled to an award of monetary damages and other relief.

### PRAYER FOR RELIEF

5  **WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against**

6  **Defendants, containing the following relief:**

7  A.   A declaratory judgment that the actions, conduct and practices of Defendants

8  complained of herein violate the laws of the State of Nevada;

9  B.   An injunction and order permanently restraining Defendants from engaging in

10  such unlawful conduct;

11  C.   An award of damages in an amount to be determined at trial, but in any event

12  in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over

13  this matter, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic

14  damages, including but not limited to, the loss of past and future income, wages, compensation,

15  seniority and other benefits of employment;

16  D.   An award of damages in an amount to be determined at trial, but in any event

17  in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over

18  this matter, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or

19  compensatory damages, including but not limited to, compensation for their severe mental anguish

20  and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-

21  confidence and personal dignity, emotional pain and suffering and other physical and mental injuries;

22  E.   An award of damages for any and all other monetary and/or non-monetary

23  losses suffered by Plaintiff in an amount to be determined at trial, but in any event in excess of the

24  jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus

25  prejudgment interest;

26  F.   An award of punitive damages, in an amount to be determined at trial, but in

27  any event in excess of the jurisdictional limit of any other court which might otherwise have

28  jurisdiction over this matter;

G.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

H.      Such other and further relief as the Court may deem just and proper.

DATED this 13th day of December, 2022.

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

_/s/ Danielle J. Barraza_____

DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
8816 Spanish Ridge Avenue
Las Vegas, NV 89148

Tracey L. Brown, Esq.
Alexandra D. Mahabir, Esq.
**THE COCHRAN FIRM**
55 Broadway, 23rd Floor
New York, New York 10006
Telephone: 212.553.9165
Facsimile: 212.227.8763
E-mail: tbrown@cochranfirm.com
          amahabir@cochranfirm.com
Will Comply with LR IA 11-2 within 14 days

*Attorneys for Plaintiff Broderick Sinclair*

# EXHIBIT 1

# EXHIBIT 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974  See enclosed Privacy Act Statement and other information before completing this form | ☐ [ ] <br> ☒ EEOC | |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) **Mr. Broderick Sinclair** | Home Phone (Incl. Area Code) | Date of Birth 12/1/66 |
|---|---|---|

Street Address

7280 Twin Maples Court,

Las Vegas, NV 89128

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name **Otis Worldwide Corporation** | No. Employees, Members **69,000** | Phone No. (include Area Code) |
|---|---|---|

Street Address        City, State and ZIP Code

**1 Carrier Place**        **Farmington, CT 06032**

| Name **Otis Las Vegas** | No. Employees, Members | Phone No. (include Area Code) |
|---|---|---|

City, State and ZIP Code

711 Pilot Drive, Suite D

**Las Vegas, NV 89119**

DISCRIMINATION BASED ON (Check appropriate box(es).)

Street Address

☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☒ OTHER (Specify) **Hostile Work Environment**

DATE(S) DISCRIMINATION TOOK PLACE

Earliest **2014**      Latest **present**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**See attached factual allegations.**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| 11/12/2021      _Charging Party Signature_ <br> Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

## BRODERICK SINCLAIR

## EEOC FACTUAL ALLEGATIONS

1.  I, Broderick Sinclair, am a 55-year old African American man who has suffered discriminatory and retaliatory treatment during my employment at Otis Worldwide ("Otis") due to my race and age.

2.  As a Senior Account Manager at Otis, I have been subjected to disparate treatment and a hostile work environment throughout my tenure, which began in 2014. I am one of the top performers at Otis Worldwide based on my own merits. Despite my stellar work performance, my non-African American colleagues, including Somer Plucker and Rachel Smith, both younger, Caucasian women, receive rewards because Otis Worldwide has provided them with opportunities, resources and support that have been denied to me.

3.  I have been treated like a slave and/or indentured servant because of Otis' discriminatory actions. For example, in December 2020, it became clear that there was a significant disparity in regard to how accounts were being assigned to representatives at Otis. There was a cap on the amount an individual project could make in incentive compensation (IC), $7,500. Over that time Ms. Smith and Ms. Plucker received several accounts with the corresponding opportunity to receive IC. I never received any such accounts.

5.  In February 2020, I filed an EEOC Charge of discrimination against Otis. Shortly thereafter, I withdrew my claim as I reasonably feared retaliation, including the loss of my Employee Scholarship Program benefits, as I was then enrolled in a Masters in Business Administration degree program.

6.  On February 19, 2021, I emailed HR representative Jane Nguyen to complain about the discrimination that I was experiencing. I told her that I have shared my complaints with several people including: Zac Christiansen, Branch Sales Manager; Steve Sperb, Branch Sales Manager; Kevin Hanson, Las Vegas General Manager; Johnathan Talich, Regional Sales Manager; Todd Christensen, the company Ombudsman. My complaints fell on deaf which has been mentally overwhelming, and stressful. I never received a response to my email to Ms. Nguyen.

7.  In late February 2021, I followed up with an email to Ms. Nguyen, but this time I copied her counterpart, Paul Hentz. I also sent additional emails throughout the Spring of 2021 to Mr. Hentz complaining about the discriminatory treatment, but it has not been remedied.

9.  In my current position, I am being systematically excluded from full participation in the compensation that the position should merit. Office management has sole discretion on how accounts are allocated and since there are no assigned territories in Las Vegas, there are no specific rules as to how accounts are assigned; as a result, my managers have continuously favored younger, Caucasian employees over me. This is documented in every metric that I was responsible for achieving, including resigns, modernizations, and conversions.

10.   My goal when I started with the company was to advance through the Otis hierarchy and utilize my years of experience and unique skillsets to help Otis Elevator grow and cultivate my own personal achievement. Unfortunately, my opportunities are being hindered not by my abilities but because of my race and age.

11.   On April 20, 2021, Judy Marks, President & CEO, (white woman) and Jim Cramer, President, Otis Americas (white male) sent an email with the subject, "A step closer to healing justice." In this email, Marks and Cramer addressed the conviction of Derek Chavin in the murder of George Floyd. Further, Marks and Cramer state that they recognize that many of their colleagues may be experiencing trauma and anxiety as they continue to wrestle the reality that they African Americans still have a long way to go to achieve equality for all people, regardless of race.

12.   On April 26, 2021, I emailed Mr. Hentz regarding Marks and Cramer's email, hoping that it was heartfelt and expressed a real understanding of how treating people of color unfairly has unfortunately been so prevalent. Unfortunately, I have discovered that Marks and Cramer's comments were mere lip service as I continue to face discriminatory treatment as a result of my race and age.

13.   The discriminatory nature of my account assignments is clear when compared with the assignments given to my younger, white colleagues.  By way of example, below are some accounts that Mr. Christiansen and Mr. Hanson discriminatorily awarded to ny younger, white colleagues, Ms. Plucker or Ms. Smith, instead of me:

- 16 units – Edgewater Casino – (discriminatorily awarded to Ms. Plucker; based on established rules, should have been assigned to me)
- 66 units – Circus Circus – (discriminatorily awarded to Ms. Plucker; based on established rules this account should have been awarded to me)
- 245 units – MGM (discriminatorily awarded to Ms. Plucker; based on established rules, should have been assigned to me)
- 10 units – Amazon (discriminatorily awarded to Ms. Smith; based on un fair application of Conversions metric; should have been awarded to me)
- 10 units – Edgewater Hotel & Casino - (discriminatorily awarded to Ms. Smith; based on established rules, should have been awarded to me)
- 170 units – MGM (discriminatorily awarded to Ms. Smith; based on established rules, should have been awarded to me)

- During this time period, I had 16 recaptures, all of which were based on my independent efforts

14.   The discriminatory assignment of these accounts, particularly the high unit MGM account, has favored Ms. Smith and Ms. Plucker significantly and caused me a significant loss in compensation, as well, as company-wide recognition.

15.   Currently, I own 399 units. The largest accounts in my base of business include:

Treasure Island – I was successful in booking several million dollars in modernization since signing the account to a 10-year maintenance agreement. Otis would much

rather invest in modernization versus any minor upgrades. As a result, it limits the amount of open orders that can realistically be generated from this account. The account has already expressed their desire to move forward with additional modernizations. However, I am not allowed to sell them, as even though I was the perfect fit for the position of Modernization Specialist, Otis, hired a younger, non-African American to take over the entire modernization role.  As a result, I have been forced to relinquish my years of effort and give this new employee the sales and commission opportunities that I worked years to foster.

The Plaza Hotel & Casino – I was successful in selling this account a $5.7 million dollar modernization that included taking all 23 units on service. The modernization package included modernizing every unit they have on property. As a result, there will be very little open order opportunities as Otis works through the modernization.

Aquarius – I owned this account since I was allowed to have a sales territory at the beginning of my Otis career. Since the beginning, I have positioned modernization to Otis as their equipment is obsolete and at some point, will not be repairable. That necessity for modernizing becomes more apparent to the customer each year I was not allowed to sell that to the customer as I was forced to give my years of effort to the new modernization specialist.

Tropicana Express – I was successful in selling them a 3.5-million-dollar modernization in one of their towers one of the first GEN2's in the Las Vegas area. The customer has another tower and I have been proposing each year faithfully. The customer is in the process of being sold and Otis Worldwide will need to address this modernization. I will not be able to sell the modernization because I have been phased out of that capacity with the newly hired modernization employee.

County Club Towers –I was successful in recapturing these units along with a modernization for $1 million dollars. As a result, there will be no sizable open order realized from this account.

16.    I have watched my peers receive every accolade imaginable and the huge income that they make while I am denied these opportunities given to younger, white employees.

18.    On May 11, 2021, I submitted an Ombudsman complaint regarding the discriminatory treatment that I have endured. Since then, I have been retaliated against by Otis, including receiving unwarranted poor performance reviews, and not receiving any support or coaching on my projects.

19.    On June 8, 2021, I emailed HR representatives, Ms. Nguyen and Mr. Hentz, regarding the Western Region Summer Intern announcement email which included a photograph of the intern class featuring no African American interns. In my email, I asked them if anyone considered the optics of the picture.

20.    On September 30, 2021, I emailed Bianca Forde, Senior Director and Counsel, Ethics and Compliance for Otis Worldwide. In my email, I asked about the status of my complaint.

3

At this time, I learned that no investigation has been conducted in regard to my complaint, despite HRs' assurance that the matter was being taken very seriously.

21.    The stress of these discriminatory and retaliatory acts has severely impacted my mental health.

Broderick Sinclair

11/12/2021
Date